| UNITED STATES DISTRICT COURT | ONLINE PUBLICATION ONLY |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |

-----------------------------------------------------------x
SVITLANA MATVEYCHUK,

                Plaintiff,        MEMORANDUM AND ORDER

    -against-                       08-CV-3108 (JG) (RML)

DEUTSCHE LUFTHANSA, AG, and
LUFTHANSA GERMAN AIRLINES,

                Defendants.
-----------------------------------------------------------x

A P P E A R A N C E S:

    HECHT & HECHT
        350 Broadway, Suite 209
        New York, New York 10013
    By:    Michael W. Hecht
        *Attorneys for Plaintiff*

    GALLAGHER & FALLER
        1050 Franklin Avenue, Suite 400
        Garden City, New York 11530
    By:    Peter F. Vetro
        *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

        Svitlana Matveychuk brings this action against Deutsche Lufthansa AG and its subsidiary Lufthansa German Airlines, alleging that one of the defendants' gate agents attacked her in a bathroom in the Frankfurt Airport during a layover on her journey from Newark to Minsk. Matveychuk moves for partial summary judgment on the issue of which law governs her claim. She argues that her claim is covered by the Montreal Convention, the multilateral treaty governing international air carrier liability; Lufthansa contends that her claim arises under German law.

BACKGROUND

Unless noted, the following facts are undisputed.

On November 29, 2007, Matveychuk flew from Newark International Airport to Frankfurt Airport on Lufthansa Flight 403, operated by United Airlines under Flight Number 8838. Her ultimate destination was Minsk, the home of her parents. The flight landed in Frankfurt at about 8:15 the next morning, roughly 20 minutes past its scheduled arrival time of 7:55 a.m. Matveychuk proceeded from the arrival gate, located in the B section of the terminal, through the transit area, a section of the airport limited to ticketed international passengers, to Gate A63, from which her connecting flight, Lufthansa Flight 3240, was scheduled to depart at 9:05 a.m. When she arrived at Gate A63, the gate agent on duty informed her that she was too late and would not be permitted to board the plane. The agent instructed her to go to the rebooking desk and arrange to take another flight.

What happened next is disputed. According to Matveychuk, she began to argue with the agent. Nevertheless, the agent still did not permit her to board the plane. As a result, she became upset and went into a restroom located within the Gate 63 waiting area.[1] The gate agent followed her into the restroom and pushed her. She fell to the floor, hitting her head, and passed out. She regained consciousness a few minutes later to find the gate agent standing over her and pouring water on her face. Lufthansa denies that the gate agent ever argued with Matveychuk or assaulted her.

After leaving the restroom, Matveychuk walked to the rebooking desk, also in the transit area, paid a fee, and was issued a ticket for another Lufthansa flight to Minsk leaving the following day, December 1. She spent the night in the transit area and boarded the rescheduled

---

[1] Lufthansa claims that it cannot "confirm" whether there is a restroom within the Gate 63 passenger waiting area, but concedes that there was a restroom nearby.

flight without incident the next morning. While in the airport, she never passed through customs and was never admitted into Germany.

DISCUSSION

A.  *Standard*

Summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* When applying this standard, the court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *See Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).

B.  *Analysis*

The Montreal Convention, a multilateral treaty governing international air travel, was ratified by the United States in 2003. It corresponds in many respects to its forerunner, the Warsaw Convention.[2] *See Shah v. Kuwait Airways Corp.*, 653 F. Supp. 2d 499, 503 (S.D.N.Y. 2009). The Warsaw Convention, ratified by the United States in 1934, was intended to encourage the growth of the infant airline industry by imposing an exclusive, uniform system of liability on air carriers that limited their risk through caps on money awards for passenger injuries and lost or damaged baggage. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 170

---

[2] The Montreal Convention is formally titled the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45. The Warsaw Convention is formally titled the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934), note following U.S.C. § 40105.

(1999). The Montreal Convention also was intended to control carriers' risk, but increased liability limits in recognition of "the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution." Montreal Convention, pmbl. The Montreal Convention did not, however, expand the definition of compensable claims beyond that of the Warsaw Convention. In language nearly identical to Article 17 of the Warsaw Convention, Article 17 of the Montreal Convention subjects carriers to liability for "damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."[3]

The Second Circuit has directed a flexible approach, taking into account several factors, to determining whether a passenger such as Matveychuk was "in the course of any of the operations of embarking" when she was allegedly injured. The factors are: (1) the activity of the passenger at the time of the accident; (2) the restrictions, if any, on her movements; (3) the imminence of actual boarding; and (4) the physical proximity of the passenger to the gate. *See King v. American Airlines, Inc.*, 284 F.3d 352, 359 (2d Cir. 2002).

Courts applying these factors have consistently held that Article 17 covers injuries sustained close in time to the boarding process and in areas that are near departure gates and limited to ticketed passengers. *See id.* at 359-60 (Article 17 applied to claim that couple was discriminatorily bumped from their flight after they "had already checked in for their flight, received their boarding passes, and boarded the vehicle that was to transport them from the terminal to the aircraft"); *Day v. Trans World Airlines, Inc.*, 528 F.2d 31, 33-34 (2d Cir. 1975)

---

[3] Article 17 of the Warsaw Convention imposes liability for "damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

4

(Article 17 applied to claims for injuries sustained during a terrorist attack that occurred after plaintiffs had surrendered their tickets, entered the area reserved exclusively for departing international passengers, and assembled at the departure gate); *Marotte v. American Airlines, Inc.*, 296 F.3d 1255, 1260-61 (11th Cir. 2002) (Article 17 applied to claim that airline supervisor physically assaulted the plaintiff as he was holding his boarding pass and about to enter the jetway); *Rajcooar v. Air India Ltd.*, 89 F. Supp. 2d 324, 327-28 (E.D.N.Y. 2000) (Article 17 applied to claim that passenger died of a heart attack while at his connecting flight's departure gate in the transit area of Heathrow Airport); *cf. Buonocore v. Trans World Airlines, Inc.*, 900 F.2d 8, 10-11 (2d Cir. 1990) (Article 17 did not apply to claim for injuries sustained during a terrorist attack that occurred in the public lobby of the terminal).

At the time she was allegedly injured, Matveychuk had narrowly missed her flight to Minsk after a long flight from Newark to Frankfurt.[4] Upset, she stopped to collect herself in a restroom near the gate before going to the rebooking desk, as she was directed to do by the gate agent. During her entire stay in the Frankfurt Airport, she remained in the secure transit area limited to ticketed international passengers. Thus, in Matveychuk's case, all of the factors, except imminence of boarding, weigh in favor of finding that she was allegedly injured while "in the course of any of the operations of embarking."

Lufthansa places great emphasis on the fact that Matveychuk's original flight to Minsk had departed, or at least stopped boarding, before she arrived at the gate, arguing that this alone compels the conclusion that she could not have been injured while "in the course of any of the operations of embarking." But the phrase "any of the operations" implies that a court should not maintain a myopic focus on the discrete act of enplaning when determining whether an injury

---

[4] Lufthansa does not dispute that the gate agent's alleged attack is an "accident" for the purpose of Article 17, which has been construed to cover intentional torts. *See, e.g.*, *Wallace v Korean Air*, 214 F.3d 293, 299 (2d Cir. 2000) (passenger's sexual assault of a fellow passenger was an "accident" under Article 17).

is encompassed by Article 17. *See Day*, 528 F.2d at 33 n.7 ("The French word 'operation' contained in the official version of the Warsaw Convention connotes a process composed of many acts. It is defined in the Nouveau Petit Larousse (1950) as 'Ensemble de moyens que l'on combine pour en obtenir un resultat,' or 'a group of procedures combined to achieve a result.'"). Delays and missed connecting flights are usual and predictable occurrences of air travel; given this reality, Matveychuk was "in the course of any of the operations of embarking" when she stopped in the bathroom on her way from the gate of her connecting flight to the rebooking desk. Moreover, the mere fact that a passenger was denied permission to board does not preclude a finding that the passenger was nevertheless in the process of embarking. *See King*, 284 F.3d at 359-60 (plaintiffs were "in the course of any of the operations of embarking" when they were involuntarily bumped from their flight and therefore the Montreal Convention preempted their § 1981 claim that they were bumped because of their race). Finally, it would not serve the treaty's goal of predictable liability to deny claim coverage to a passenger solely because her alleged injury occurred shortly *after* her connecting flight departed, when her first flight was late through no fault of her own and there is no suggestion that she deliberately missed her connecting flight. *See El Al*, 525 U.S. at 171. In these circumstances, neither the letter nor the spirit of the Convention justify forcing Matveychuk to pursue her claim under German law.

Although it is somewhat unclear from her papers, it appears that Matveychuk is also moving for complete summary judgment. In her reply brief, she contends that there is no genuine issue of material fact regarding Lufthansa's liability because the gate agent on duty at the time she was allegedly injured, Heike Tenkhoff, never denied assaulting her when she was deposed.[5] In support of her motion, she cites only Tenkhoff's answer -- "No, I don't recall," to

---

[5] Matveychuk, who testified that she did not learn the name of the gate agent at the time of the alleged attack, never testified that she recognized Tenkhoff as her assailant. Lufthansa appears to have produced

the question, "Do you have any recollection of bumping into a passenger in the ladies' room on the morning of November 30, 2007, whether it's an accident or anything else?" Matveychuk's lawyer, however, never asked Tenkhoff if she assaulted Matveychuk, Tenkhoff never admitted doing so, and Lufthansa denies that any of its agents ever assaulted her. Summary judgment on the issue of liability is therefore inappropriate.

## CONCLUSION

The plaintiff's motion for partial summary judgment is granted; the Montreal Convention governs her claim. The plaintiff's motion for complete summary judgment, if she intended to make one, is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: September 7, 2010
      Brooklyn, New York

---

Tenkhoff for a deposition because its records show that she was the agent on duty at Gate A63 for Flight 3240 on November 30, 2007.